FILED
IN OPEN COURT
DEC 1 3 2021
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE MARIA FRAGOSO D'ACUNTI,<br><br>Defendant. | Case No. 19-cr-282 |

## STATEMENT OF FACTS

The United States and the defendant, JOSE MARIA FRAGOSO D'ACUNTI (hereinafter, "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. From at least in or about October 2018 through at least in or about December 2018, in Colombia and elsewhere, the defendant did unlawfully, knowingly and intentionally combine, conspire, confederate and agree with others both known and unknown to unlawfully, knowingly and intentionally possess with intent to distribute five (5) kilograms or more of cocaine, a Schedule II controlled substance, on board a vessel subject to the jurisdiction of the United States, in violation of Title 46, United States Code, Sections 70503(a) and 70506.

2. It was part of the conspiracy that the defendant and his co-conspirators planned to traffic multi-hundred kilogram quantities of cocaine, valued at millions of United States dollars, to Europe by causing such cocaine to be secreted aboard commercial shipping containers in the Port of Cartagena, Colombia. The defendant and his co-conspirators used commercial import/export companies as "front" companies to conceal their cocaine trafficking activities. It was further part of the conspiracy that the defendant used his former position in the Colombian

1

Police Department, along with familial and other connections, to identify and bribe security and law enforcement officials to aid in the trafficking of cocaine.

3. In particular, the defendant utilized his pre-existing relationship to a member of the Colombian National Police to be connected to a port security officer ("Officer 1") who would be willing to assist in the smuggling of cocaine through the Port of Cartagena. In and around November 4, 2018, at or near Cartagena, Colombia, the defendant and another co-conspirator met with Officer 1 to discuss smuggling cocaine through the port so that it could be transported aboard commercial maritime vessels. The defendant offered to pay Officer 1 one billion Colombian pesos to assist his drug trafficking organization ("DTO"), and Officer 1 agreed.[1] Officer 1, the defendant, and the other DTO member discussed various shipping routes for sending cocaine from Colombia to Europe. Officer 1 stated, "I have one that's NYK that's coming to Cartagena, it goes to the United States and from there . . . it goes to Antwerp. Cartagena-United States, United States-Antwerp."

4. Over the following weeks, the defendant organized numerous meetings in Colombia between Officer 1 and the DTO to plan a multi-hundred kilogram shipment of cocaine. The defendant made several payments to Officer 1 in furtherance of the agreement to pay one billion Colombian pesos to Officer 1. The defendant also brought other associates into the conspiracy. The defendant utilized them as drivers to facilitate delivering bribe money to Officer 1, among other duties. These associates were aware that they were facilitating the export of cocaine and were paid by another member of the DTO for their involvement.

5. On or about November 22, 2018, the defendant, Officer 1, and other DTO members met in a hotel room in or around Santa Marta, Colombia. Members of the DTO showed Officer 1

---

[1] In early November of 2018, the exchange rate was approximately 3,160 Colombian Pesos to 1 U.S. Dollar. Using this exchange rate, one billion Colombian Pesos was equivalent to approximately $316,455 U.S. Dollars.

2

a sample pineapple box and explained to Officer 1 how the bricks of cocaine would be comingled with pineapple in the pending shipment. A coconspirator showed to Officer 1 a photograph of the shipping container number that would contain the cocaine.

6. On or about November 23, 2018, the DTO caused the cocaine-laden container to enter the port of Cartagena. It was subsequently loaded onto the commercial vessel Venice Bridge.

7. On or about November 26, 2018, the Venice Bridge vessel left the port of Cartagena. The Venice Bridge vessel traversed U.S. customs waters and the contiguous zone of the U.S. and entered into the Port in Savannah, Georgia, on or about November 29, 2018. U.S. law enforcement searched the container that the DTO specified to Officer 1 and seized 516 kilograms of cocaine hidden among pineapples.

8. On or about December 4, 2018, the defendant and another DTO member met with Officer 1 regarding a second shipment of cocaine. They discussed sending 200 kilograms of cocaine comingled with pineapples and limes to Antwerp, Belgium. Later that date, the defendant provided Officer 1 with a photograph of the shipping container number in which the DTO intended to place the cocaine.

9. On or about December 5, 2018, Officer 1, at the direction of the DTO, ensured the container passed inspection protocols at the Port of Cartagena.

10. On or about December 8, 2018, the shipping container was loaded aboard Marine Vessel NYK Romulus and departed from the port that day. Later that day, Officer 1 met with members of the DTO, including the defendant, and they discussed sending another shipment in late December 2018.

11. On or about December 15, 2018, Marine Vessel NYK Romulus traversed U.S. customs waters and the contiguous zone of the U.S. and entered into the Port of Savannah, Georgia.

U.S. law enforcement searched the container that the DTO specified to Officer 1 and seized 205 kilograms of cocaine hidden among limes. The defendant, not knowing that the cocaine had been seized, flew to Europe to oversee the receipt of the cocaine.

12. In total, the defendant paid on behalf of the DTO over one billion Colombian pesos to Officer 1.

13. The total amount of cocaine involved in this conspiracy for which the defendant is directly accountable is in excess of four hundred and fifty (450) kilograms.

14. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

15. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

16. The defendant agrees jurisdiction and venue lie with this Court pursuant to 46 U.S.C. § 70504 and 18 U.S.C. § 3238.

                    Respectfully submitted,

                    Jessica D. Aber
                    United States Attorney

Date: <u>December 13, 2021</u>    By: _____
                                                 Anthony T. Aminoff
                                                 Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, JOSE MARIA FRAGOSO D'ACUNTI, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
JOSE MARIA FRAGOSO D'ACUNTI

I am Gregory T. Hunter, defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Gregory T. Hunter
Attorney for JOSE MARIA FRAGOSO D'ACUNTI